960 So.2d 1175 (2007)
STATE of Louisiana, Appellee
v.
Darrell A. McDUFFEY, Appellant.
No. 42,167-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1177 Louisiana Appellate Project, by Sherry Watters, New Orleans, for Appellant.
Jerry L. Jones, District Attorney, Geary S. Aycock, Assistant District Attorney, for Appellee.
Before STEWART, PEATROSS & DREW, JJ.
PEATROSS, J.
Defendant, Darrell A. McDuffey, was convicted by a jury of the responsive verdicts of forcible rape and attempted oral sexual battery. He was sentenced to 37 years at hard labor without benefits for forcible rape, and 3 years at hard labor without benefits for attempted oral sexual battery, to run consecutively. Defendant now appeals. For the reasons stated herein, Defendant's convictions and sentences are affirmed.

FACTS[1]
The eight-year-old victim, J.B.,[2] and her mother, L.B., were living with Defendant, who was L.B.'s boyfriend, in a trailer home located on Splane Drive in West Monroe when Defendant began sexually abusing J.B. several times a week. The trailer home was initially rented by Defendant  L.B. and J.B. moved in approximately three or four months later. Defendant was 40 years old at the time of trial. The abuse consisted of oral sex and vaginal sexual intercourse. The victim was born in January 1994 and was 11 years old in April 2005 when she first reported the crimes to Defendant's sister, Kimberly. The victim also told her mother, L.B., and Defendant's other sister, Dewanna. On or about April 23, 2005, the victim began living temporarily with Dewanna.
L.B., Defendant and Kimberly all worked at a carwash near the trailer home. While getting his car washed on May 10, 2005, Detective C.J. Beck of the Monroe Police Department was approached by two employees regarding the possible sexual abuse of L.B.'s daughter (the victim) by Defendant. Further investigation revealed *1178 the victim's name and the fact that she was living with Dewanna. Detective Leslie Williams contacted Dewanna, who brought J.B. in for an interview. Dewanna related that she did not contact the police because she spoke to L.B., the victim's mother, about the suspected abuse and L.B. said that she would report it. L.B., however, never contacted the police. In her interview, J.B. described in detail various personal care products used as a lubricant by Defendant during the abuse. She further described identifying characteristics of Defendant's genitals in detail. A search warrant was obtained and executed at the residence on May 12, 2005, and two products were seized.
On May 12, 2005, officers also obtained an arrest warrant for Defendant and a search warrant for Defendant's body for the purpose of photographing his genitals, but Defendant could not be located. After May 12, 2005, Det. Williams testified that he returned to the trailer home "several times," including May 18, 2005, in an attempt to locate Defendant. During these attempts, either nobody was home or Det. Williams was told that Defendant was not there. Det. Williams attempted to speak with Kimberly, who was now living at the trailer home, but she was uncooperative and denied knowing Defendant's location.
Det. Williams continued to search in and around West Monroe for Defendant. She had received information from Dewanna that Defendant sometimes drove a tan Mazda automobile. On May 21, 2005, Defendant's mother was stopped for a traffic violation while driving the described automobile. Det. Williams arrived at the traffic stop and spoke with Defendant's mother, advising her that she had an arrest warrant for Defendant and needed to locate and speak to him. Defendant's mother stated that Defendant was not at his trailer home on Splane Drive and she had no idea where Defendant was located.
Defendant was finally arrested on June 15, 2005, when he turned himself in to police. Defendant had called and obtained a ride from his Splane Drive landlord, Troy Kennedy, who picked up Defendant on DeSiard Street. According to Det. Williams, the landlord had previously driven Defendant to turn himself in approximately a week prior to the arrest, but Defendant was turned away because of a discrepancy between the name on his birth certificate, "Darren," and the name he uses, "Darrell." This caused confusion when the police records were searched for his name as a person with an outstanding warrant. Although the landlord opined that Defendant's first attempt to turn himself in occurred approximately three weeks prior to his arrest on June 15, 2005, he couched this opinion with disclaimers that he did not "know" and did not "recall." In fact, when asked what he would say if another witness had a different time frame, the landlord replied that he did not remember.
Defendant was charged by bill of indictment with aggravated rape and oral sexual battery of J.B., a juvenile under the age of 15 years. Numerous pretrial motions filed by the defense, including a motion to quash and motion for continuance, were heard and denied. Defendant was tried before a jury. The State presented evidence of the facts and circumstances related hereinabove. Dr. Meade O'Boyle, a board-certified pediatrician specializing in child sexual abuse victims, testified that the victim's physical exam revealed a prepubescent female whose hymenal ring was completely open. This was an unusual finding for such an immature child, and Dr. O'Boyle opined that the physical finding was consistent with frequent sexual intercourse. The defense also presented several witnesses. As previously stated, Defendant was found guilty of the responsive *1179 verdicts of forcible rape and attempted oral sexual battery.
Defendant was sentenced on April 11, 2006. At that hearing, Defendant made a statement describing his new relationship with God, but denied responsibility for the crimes and asked the court for mercy. The trial court acknowledged Defendant's oral and written statements and the fact that it considered the statements, together with the information included in the presentence investigation report. Both were filed into the record. The trial court noted that it had conducted extensive research and gave citations of several cases involving crimes similar to those committed by Defendant.
The trial court next set forth Defendant's age (41), work and social history, second-felony offender status and the details of Defendant's lengthy criminal history. It was observed that Defendant was the male father figure in the home for his young victim. The trial court noted that Defendant had already received considerable leniency and mercy from the jury's responsive verdicts.
In addition, the court discussed the facts of the case, including the length of time over which the crimes were perpetrated and the sad fact that family members knew of, but never reported, the abuse. The trial court found it particularly disturbing to know that a child as young as 11 years old could give such a detailed description of Defendant's genitalia. Defendant's steadfast denial of the allegations against him and his nonchalant manner were noted as evidencing his lack of remorse. The trial court further observed that, although no DNA evidence was presented, Dr. O'Boyle had testified that the child's genitalia were like those of an adult who had frequent sexual intercourse. It noted that the victim's description of personal care products used during the abuse was corroborated by the items seized from the trailer home. The victim's testimony that she feared Defendant and was threatened by him was also noted. The trial court observed that these were crimes against a person and were sex crimes. It noted that Defendant had created a "train wreck" in the victim's world which cannot be repaired and will forever affect her trust of men and of those who love her.
After discussing in detail its consideration of the sentencing guidelines set forth in La. C. Cr. P. art. 894.1, the trial court sentenced Defendant to serve 37 years' imprisonment at hard labor without benefit of probation, parole or suspension of sentence for forcible rape and to serve 3 years' imprisonment at hard labor without benefit of probation, parole or suspension of sentence for attempted oral sexual battery. The sentences were ordered to be served consecutively. Defendant was advised of the prescriptive period for filing for post-conviction relief pursuant to La. C. Cr. P. art. 930.8. His timely filed motion to reconsider sentence was denied. This appeal followed.

DISCUSSION
Assignment of Error Number One (verbatim): The trial court erred in giving a jury instruction on flight that was contrary to the evidence that the defendant had been trying to turn himself in for three weeks.
The following is the jury charge read by the court concerning flight:
BY THE COURT:
 Flight. Evidence of flight concealment and attempt to avoid apprehension is relevant. It indicated consciousness of guilt and therefore is one of the circumstances from which you the Jury may infer guilt.
Defendant asserts that the officer went to his trailer home twice, on May 12, 2005, *1180 and May 18, 2005, to execute the arrest warrant, but none of his relatives knew where he was located. He submits that he unsuccessfully attempted to turn himself in to police three weeks before his arrest on June 15, 2006. According to Defendant, under these circumstances, the jury instruction regarding flight was erroneous, misleading and unsupported by the evidence.
On the other hand, the State suggests that it is clear from the evidence that Defendant fled his usual place of abode when the complaint was made regarding his sexual assaults against the victim. The State contends that Defendant remained in hiding and his family claimed not to know his location for over a month. Further, the State notes that Defendant gave the incorrect name when he initially attempted to turn himself in to police. It contends that this is ample evidence of flight and concealment and an early attempt to avoid apprehension. We agree.
The court shall charge the jury: (1) As to the law applicable to the case; (2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and (3) That the jury alone shall determine the weight and credibility of the evidence. La. C. Cr. P. art. 802. A requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La. C. Cr. P. art. 807; State v. Gipson, 28,113 (La. App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402. A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused. La. C. Cr. P. art. 921.
In the case sub judice, the record supports the trial court's granting of the State's request for the special jury instruction regarding flight. The requested special charge did not require qualification, limitation or explanation, and was wholly correct and pertinent. It was not included in the general charge or in another special charge to be given. See La. C. Cr. P. art. 807; State v. Gipson, supra. Hence, the trial court did not err in granting the State's request for the special jury instruction.
Furthermore, even if considered as error, the jury instruction did not affect substantial rights of the accused. La. C. Cr. P. art. 921. Even without considering the issue of flight, Defendant's guilt of the two offenses is wholly supported by evidence contained in the record. The evidence included the victim's credible testimony, which was corroborated in part by physical evidence and expert testimony.
This assignment is without merit.
Assignment of Error Number Two (verbatim): The trial court erred in imposing unconstitutionally excessive sentences on Darrell McDuffey, particularly by ordering the sentences to be served consecutively.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance *1181 with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App.2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Dagenhart, 39,874 (La.App.2d Cir.8/17/05), 908 So.2d 1237, writ denied, 05-2421 (La.4/24/06), 926 So.2d 539; State v. Coleman, 32,906 (La. App.2d Cir.4/5/00), 756 So.2d 1218, writ denied, 00-1572 (La.3/23/01), 787 So.2d 1010.
Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases where the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App.2d Cir.3/5/03), 840 So.2d 675; State v. Johnson, 35,487 (La.App.2d Cir.1/23/02), 806 So.2d 960.
Among the factors to be considered are the defendant's criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir. 1986), writ denied, 496 So.2d 355 (1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir. 1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ denied, 435 So.2d 433 (1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); defendant's apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La. App. 4th Cir.1987); the potential for defendant's *1182 rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987); and whether defendant has received a benefit from a plea bargain, State v. Jett, supra; State v. Adams, supra. See State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 So.2d 104.
As this court has noted previously, jurisprudence has moved away from requiring remand under certain circumstances involving the imposition of consecutive sentences without the trial court's having specifically stated reasons therefor. State v. Hampton, supra. The cases cited in Hampton conclude that the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support the consecutive sentences imposed.
The record in the present case contains more than sufficient articulation by the trial court of the factual basis for the sentences as per La. C. Cr. P. art. 894.1. The trial court meticulously set forth its reasons for sentencing and consideration of the sentencing guidelines set forth therein. Moreover, when Defendant's heinous crimes and punishment are viewed in light of the harm done to society by sexual predators in general, and to this young victim in particular, the sentences do not shock the sense of justice. See State v. Weaver, supra; State v. Lobato, supra; State v. Hogan, supra; State v. Bradford, supra. We conclude that Defendant's sentences are not constitutionally excessive.
It also cannot be said that, on this record, the trial court abused its discretion in imposing consecutive penalties, considering Defendant's past criminality and other circumstances in his background which justify treating him as a grave risk to the safety of the community. See State v. Walker, supra; State v. Feaster, supra. Any perceived failure on the part of the trial court to articulate specific reasons for consecutive sentences does not require remand because the record provides an adequate factual basis to support consecutive sentences. See State v. Hampton, supra.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant, Darrell A. McDuffey, are affirmed.
AFFIRMED.
NOTES
[1] The facts of these lurid crimes are described herein only as necessary to adequately examine the assigned errors, which do not include a challenge to the sufficiency of the evidence supporting the convictions.
[2] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W). The victim's mother's initials are used for the same reason.