BROWN, C.J.
| j After a jury trial, defendant, Timothy Wayne Calhoun, charged with 19 sexual offenses, was convicted of 12 offenses. On appeal, defendant challenges the sufficiency of the state’s evidence, the trial court’s failure to sever the charges, and the length of his sentences. We affirm defendant’s convictions. Defendant’s sentence for Count 1, aggravated rape, is amended to reflect that it will be served at hard labor. Additionally, defendant’s sentence for Count 19, cruelty to a juvenile, is amended to reflect that it is to be served with benefits. As amended, all sentences are affirmed.
FACTS
On August 5, 2013, the father of an alleged victim, J.C.S., contacted the Oua-chita Parish Sheriffs Office, alleging that defendant had sexually abused his daughter. On August 8, 2013, K.S., a cousin of *1105 J.C.S., also accused defendant of sexual abuse. As both girls were (and still are) minors, they were questioned by forensic interviewers at the Child Advocacy Center in Ouachita Parish.
On August 27, 2013, A.C., after learning of defendant’s arrest, contacted the Oua-, chita Parish Sheriffs Office to report sexual abuse by defendant. Then, on August 29, 2013, R.J. contacted the same office, alleging sexual abuse by defendant in 1996.
Prior to the allegations made against him in 2013, defendant had previously been arrested in 1997 for the sexual assault of another minor, C.J. These charges were later dismissed without prejudice because defendant joined the military. Due to the number of new allegations brought against defendant in 2013, the case involving C.J. was re-opened.
li>On November 14, 2013, defendant was charged by grand jury indictment, as amended, with 19 sexual offenses, including aggravated rape, sexual battery, indecent behavior with a juvenile, molestation of a juvenile, cruelty to a juvenile, attempted carnal knowledge of a juvenile, and-attempted forcible rape. According to the indictment, defendant sexually abused all five minor victims, A.C., R.J., C.J., J.C.S., and K.S., at various times between 1995 and 2013.
Defendant pled not guilty to all charges, and on March 26, 2014, he filed a motion to quash the indictment, arguing that the inclusion of crimes from the five alleged victims was highly prejudicial to his case and gave rise to possible claims of double jeopardy. This motion was heard on May 28, 2014, and was denied, with the trial court giving oral- reasons for its ruling following the hearing.
On February 8, 2016, defendant’s trial commenced. The state called 14 witnesses, including the five victims. All of the victims and their families in this case were related to, neighbors with, or friends of defendant or his family at some point since the offenses began in 1995. In an effort to simplify this appeal, the testimony presented by the state and defense is discussed below as relates to each victim and the respective crimes associated with her. Furthermore, as defendant was convicted of offenses involving three of the five victims, only witness testimony relevant to the convicted offenses is included herein.
As previously stated, after deliberations, the jury found defendant guilty of 12 of the 19 charges. Specifically, defendant was convicted of Counts 1 through 8 and Counts 16 through 19.
^Sentencing was deferred, pending a pre-sentence investigation (PSI). On April 26, 2016, the trial court sentenced defendant as follows:
*1106 [[Image here]]
The trial court ordered that the sentences for Counts 1 through 3, the convictions pertaining to A.C., run concurrently with each other. The sentences for Counts 4 through 8, the convictions pertaining to R.J., were ordered to run concurrently with each other, but consecutively with Counts 1 through 3. Similarly, Counts 16 through 19, the convictions pertaining to K.S., were ordered to run concurrently with each other, but consecutively with Counts 1 through 8.[1]
|/The instant appeal followed.[2]
DISCUSSION
Sufficiency of the Evidence
Defendant argues that the evidence was insufficient to sustain his convictions due to a lack of physical evidence and the state’s reliance on victims’ testimonies alone. Defendant also argues that the questionable credibility of one victim’s alle *1107 gations, which caused the jury ultimately to find defendant not guilty of the charges related to that victim, calls into question the veracity of the other victims’ allegations.
On the other hand, the state argues that there was ample evidence against defendant to support his convictions.

Counts 1-3: Aggravated Raye, Sexual Battery, and Indecent Behavior ivith a Juvenile—A.C.

A.C. testified that she is the first cousin of defendant. A.C. further stated that she and her father lived at her grandmother’s house when she was in elementary school and junior high school. During that time, her paternal uncle Daniel and his children, including defendant, also periodically lived at the grandmother’s house.
A.C. stated that in 1995, during a time when defendant was living at their grandmother’s house, he forced A.C. to have sexual intercourse with him on several occasions. According to A.C., this began shortly after she turned 10 years old. On one occasion, defendant had sex with A.C. near a dirt pit. Another time, defendant entered her room while she was sleeping and forced her to have sex. A.C. stated that all of these acts occurred | ¡¡without her consent. She also testified that these incidents occurred prior to the incident involving her friend R.J.
A.C. testified that she told R.J. of the incidents, as well as several adults, including defendant’s father and her grandmother. A.C. testified, however, that “it didn’t do any good” and “nothing was ever done about it.” A.C. recalled locking her door at night, and one night, she was awakened by sounds at her door. Her door was open, and A.C. could see her grandma yelling at defendant, who was standing in his underwear, holding a butter knife, next to her open door.
In 2013, A.C. was informed of charges involving other victims pending against defendant. A.C. stated that upon learning of the charges, she consulted a lawyer and approached a detective, Darryl Frost, with the Ouachita Parish Sheriffs Office. While A.C. admitted to some prior animosity between defendant’s side of the family and her own, A.C. denied fabricating the charges. In fact, A.C. admitted to being very uncomfortable, and scared about testifying. During A.C.’s testimony, the court had the jury removed and reprimanded defendant’s wife for giving A.C. threatening looks and mouthing or mumbling threatening words. The judge ordered defendant’s wife to have no contact with A.C. and informed the wife that any violation of his order would result in her arrest and a finding of contempt. The judge ultimately ordered defendant’s wife to be removed from the courtroom for the duration of A.C.’s testimony.
Detective Darryl Frost testified that he met with A.C. in his office on August 7, 2013. He stated that A.C. complained of being touched and forced to have sexual intercourse with defendant on several occasions while they were both living at their grandmother’s house. A.C. told Det. Frost that |fithe abuse began when she was around eight years old and ended when she moved out, which was when she was approximately 13 years old. Upon receipt of A.C.’s allegations, Det. Frost referred the matter to the district attorney’s office.

Counts í-8: Aggravated Rape, Sexual Battery, Indecent Behavior with a Juvenile, Cruelty to a Juvenile, and Molestation of a Juvenile—R.J.

R.J. testified that she was childhood friends with A.C. During the summer of 1996, A.C. was living at her grandmother’s house, and R.J., who was then 11 years old, would frequently spend the night there. R.J. stated that she met de *1108 fendant on one of her visits. According to R.J., one day, she, A.C., and another friend were at A.C.’s house fyhen defendant visited and offered to take them to either the zoo or a park, and the three girls agreed. Instead of going to the zoo or the park, however, defendant briefly stopped at a store to buy alcohol and then proceeded to take the girls to a room at a local “hotel.” R.J. testified that it was a small room in a crummy motel, with a bed in the center and an attached bathroom. They sat around drinking something like “Strawberry Fields.” R.J. testified that although it was the first time she had alcohol, she was not intoxicated. Defendant then ordered A.C. and the friend to go into the bathroom, which they did, leaving R.J. alone in the room with defendant, who sat on the bed next to R.J. and began kissing her “top area.”
After he started kissing R.J., defendant began to fondle her. vaginal area without her consent. R.J. testified that she tried to push his hands away, to no avail. Defendant then had R.J. lie on her back on the bed, and he removed her shorts and underwear. R.J. was still wearing her top. R.J. testified that defendant lay on top of her, and she could feel his penis Ivpenetrate her vagina. According to R.J., she immediately began to bleed. Upon realizing that R.J. was bleeding, defendant stopped what he was doing and got off of her. R.J. then went to the bathroom to be with her friends. R.J. told the two girls what had happened and showed them that she was bleeding. At trial, R.J. stated that she was 11 years old at the time of the incident and that she had never had sexual intercourse before. R.J. further testified that the bleeding was not caused by her period because her menstrual cycle did not start until she was 13 years old. When asked whether she tried to fight defendant, R.J. said that she did not because she was too afraid. According to R.J., “I was an eleven year old girl and he was a grown man.” R.J. did not tell the police or her parents about the incident because she was afraid she would get into trouble. R.J. stated that at the time of the incident, defendant had a tattoo of Thumper, the rabbit from Bambi, on one of his arms.[3]
R.J. testified that she lost contact with A.C. about two years later. In 2013, A.C. contacted R.J., informing her of defendant’s arrest and encouraging R.J. to testify against defendant for what he did to her the summer of 1996. R.J. testified that she had not saved any physical evidence from the incident.
A.C. confirmed during her testimony that defendant was born in 1977, making him approximately seven years older than both A.G. and R.J. At the time of the incident, he was over the age of 18. A.C. corroborated R.J.’s testimony, adding that she and the friend were ordered by defendant to go to the bathroom and lock the door. A,C. also testified that, while she could not | Ssee or hear what occurred between defendant and R.J. because A.C. was locked in the bathroom, she knew what had happened because R.J. came into the bathroom crying and bleeding from her vagina. R.J. told A.C. that defendant tried to have sex with her, and R.J. was scared because it made her bleed.
Detective Frost testified at trial that he took R.J.’s complaint against defendant. Det. Frost further testified that, although the exact date of the incident is unclear, the motel where the incident allegedly occurred is the Quaker Motel.

*1109
Counts 16-19: Sexual Battery, Indecent Behavior with a Juvenile, Molestation of a Juvenile, and Cruelty to a Juvenile—K.S.

At trial, the state called Jo Caston, a detective with the Ouachita Parish Sheriffs Office. Det. Caston testified that she was informed of K.S.’s allegations against defendant on August 8, 2013, by KS.’s mother, Mrs. B., who is the half-sister of defendant’s wife, which makes K.S. defendant’s niece by marriage. Det. Caston interviewed K.S. at her home that same day, and then later took K.S. to the Child Advocacy Center (“CAC”) to be interviewed by a forensic interviewer. Det. Caston was given a copy of the interview and subsequently arrested defendant. Det. Caston further testified that, due to the length of time between the commission of the offenses and the reports, no physical evidence was recovered.
Next, Mrs. S., who is K.S.’s aunt (she and Mrs. B. are sisters) and mother of one of the alleged victims, J.C.S., testified that she was present when the police were informed of the allegations that defendant had sexually abused K.S. Mrs. S. explained that that she and defendant’s wife, Mrs. C., | sare half-sisters, and defendant is KS.’s uncle. Mrs. S. testified that her own child, J.C.S., had made allegations against defendant on August 5,2013.[4]
Tiffany O’Neal, a forensic interviewer with the CAC, testified that Det. Caston brought K.S. to the CAC on August 13, 2013. Ms. O’Neal conducted a recorded interview of K.S., and a DVD copy of the interview was admitted into evidence and. played for the jury during Ms. O’Neal’s testimony. Ms. O’Neal further testified that only she and K.S. were in the interview room, but the interview was observed by her supervisor and Det. Caston from a monitor located in the supervisor’s office.
K.S. testified next. The video of KS.’s interview was replayed, and K.S. verified that she was telling the truth, and no one had instructed her on what to say. In the video, K.S. told Ms. O’Neal that she was using the restroom at “Uncle Tim’s” house when defendant entered the restroom, shut the door and stood in front of it with his arms crossed, watching her. Defendant asked K.S. if she was done using the restroom, and then asked to see her “tootie.” K.S. told him no, but, before she could put on her underwear, defendant touched the outside of her “tootie.” K.S. told Ms. O’Neal that she tried to push defendant’s hand away. During the interview, Ms. O’Neal showed K.S. a drawing of a naked woman and asked her to identify the body part where defendant touched her. K.S. pointed to the woman’s vagina and stated that was her “tootie.” K.S. then told Ms. O’Neal | inthat defendant only touched her once, and she was approximately six years old at the time. K.S. was nine years old when she testified at trial.
KS.’s mother, Mrs. B., testified next. Mrs. B. confirmed that K.S. reported being touched by defendant in the vaginal area while K.S. was using the restroom. Upon learning this, Mrs. B. immediately contacted the Ouachita Parish Sheriffs Office. Mrs. B. further testified that she had KS. examined by a doctor after learning of the allegations, but K.S. showed no signs of physical abuse.
*1110 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App. 2 Cir. 01/9/08), 974 So.2d 181, writ denied, 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La. 02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/06/09), 21 So.3d 297.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court affords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied, 09-0725 (La. U12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App. 2 Cir. 05/09/07), 956 So.2d 758, mit denied, 07-1209 (La. 12/14/07), 970 So.2d 529.
La. R.S. 14:42 (Aggravated Rape) provides in pertinent part:
A. Aggravated rape is a rape ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
La. R.S. 14:43.1 (Sexual Battery) provides in pertinent part:
A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender ... when any of the following occur:
(1) The offender acts without the consent of the victim.
La. R.S. 14:81 (Indecent Behavior with Juveniles) states in pertinent part:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense ....
La. R.S. 14:81.2 (Molestation of a Juvenile) states:
A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a Imposition of control or supervision over the juvenile. *1111 Lack of knowledge of the juvenile’s age shall not be a defense.
Finally, La. R.S. 14:93 (Cruelty to a Juvenile) states in pertinent part:
A. Cruelty to juveniles is:
(1) The-intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable, pain or suffering is caused to said child. Lack of knowledge of child’s age shall not be a defense ....
When the defendant asserts that he was not the perpetrator, or remains silent, the state bears the burden of negating any reasonable probability of misiden-tification. State v. Powell, 27,959 (La.App. 2 Cir. 04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La. 02/21/97), 688 So.2d 520; State v. Mickens, 31,737 (La.App. 2 Cir. 03/31/99), 731 So.2d 463, writ denied, 99-1078 (La. 09/24/99), 747 So.2d 1118. It is the province of the jury to resolve conflicting inferences from the evidence. State v. Mickens, supra; State v. Free, 26,267 (La. App. 2 Cir. 09/21/94), 643 So.2d 767, writ denied, 94-2846 (La. 03/10/95), 650 So.2d 1175. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness—if believed by the trier of fact—is sufficient to support for a requisite factual conclusion. State v. Jones, 34,863 (La.App. 2 Cir. 08/22/01), 794 So.2d 107, writ denied, 01-2648 (La. 08/30/02), 823 So.2d 938. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. State v. 'Mick-ens, supra. This is equally applicable to the testiihony of sexual assault victims. State v. Rives, 407 So.2d 1195 (La. 1981); State v. Thomas, 30,490 (La.App. 2 Cir. 04/08/98), 711 So.2d 808, writ denied, 99-0331 (La. 07/02/99), 747 So.2d 8.
| iaThere was sufficient direct evidence from which the jury could have found defendant guilty of all 12 offenses. First, the testimony from A.C. alone is sufficient evidence that defendant is guilty of aggravated rape, sexual .battery, and. indecent behavior with a juvenile. A.C. clearly stated that defendant forced her to have noncon-sensua! sex on numerous occasions, beginning when she was approximately 10 years old. Despite defense counsel’s suggestion that she fabricated the story due to familial strife, A.C. stated that she was telling the truth.
Next, the testimony of R.J., corroborated in part by the testimony of A.C., is also sufficient evidence to support the jury’s finding that defendant is guilty of aggravated rape, sexual battery, indecent behavior with a juvenile, cruelty to a juvenile, and molestation of a juvenile. R. J. testified that she was 11 years old at the time of the incident, and defendant was over 18 years old. R.J. stated that, after ordering A.C. and another girl into the bathroom, defendant began kissing her “top area,” then he fondled her vaginal area. He removed R.J.’s shorts and underwear and proceeded to have sex with her. R.J. stated that this was not done with her consent, and she did not tell anyone because she was afraid. A.C. confirmed that R.J. was bleeding as a result of her encounter with defendant because she saw the blood in RJ.’s underwear.
Third, K.S.’s testimony is sufficient evidence to support the jury’s finding that defendant is guilty of sexual battery, indecent behavior, molestation of a juvenile, and cruelty to a juvenile. Despite her young age, K.S. was able to clearly recall the incident as she discussed what happened with Ms. O’Neal. In telling her story, K.S. did not hesitate or second-guess herself. K.S. stated that when defendant walked in on her using the 114bathroom, he *1112 placed his hand on the outside of her “too-tie” without her consent. Defendant further told K.S. not to tell, anyone, or she would get into trouble. The- facts clearly show that there is at least- a 20-year age difference between K.S. and defendant.
Furthermore, there appears very little chance of misidentification of defendant as the perpetrator. During their testimony, each victim clearly identified defendant as their abuser, and described the general location at which each incident occurred. In certain incidents, the victim’s own testimony was corroborated by other witnesses.
Finally, defendant’s argument that the falsity of one victim’s allegations calls into question the truth of the other victims’ allegations is without merit. As previously stated, five young girls accused defendant of committing various sexual offenses against them. One of the alleged victims was J.C.S. At trial, the state questioned J.C.S. as well as her mother, Mrs. S. It was suggested by Mrs. S. that the allegations made by her daughter J.C.S. were concocted by J.C.S.’s father. Mrs, S. stated that, at the time the allegations were made, she and her husband were in the middle of an acrimonious divorce, Mrs. S. testified that she believed J.C.S.’s father fabricated the allegations in an effort to discredit her. Specifically, Mrs. S. testified that J.C.S.’s father thought he’ could get full custody of his children and restrict Mrs. S.’s visitation rights by alleging that she was unfit because she allowed J.C.S. to play at defendant’s home. Apparently, J.C.S.’s father also sent emails to Mrs. S. in which he threatened to label defendant a child molester. None of these emails were admitted into evidence at trial. '
It appears the jury was swayed by Mrs. S.’s testimony as defendant was acquitted of the crimes involving J.C.S. Considering this result, it is 1^illogical for defendant to argue that the veracity of J.C.S.’s allegations tainted the other victims’ allegations. As noted above, the reason for the perceived falsity of J.C.S.’s allegations was personal to her family. J.C.S’s father was attempting to discredit her mother by suggesting that she allowed their children to play at the home of a pedophile. This reason would have had no bearing on the testimony of the other victims, particularly those who are not in contact with J.C.S. or her family, and who alleged that the crimes against them took place nearly 15 years prior. It is not relevant that J.C.S.’s allegations might have been the catalyst for the other victims to come forward. Defendant’s argument that the allegations of all five victims formed some elaborate conspiracy against .him has the markings of a conspiracy theory itself. In any event, the argument made by defendant goes to credibility calls made by the jury, which will not be disturbed on appeal.
This assignment of error lacks merit.
Failure to Sever the Charges for Trial
Defendant argues that the trial court erroneously denied his timely filed motion to quash the indictment. According to defendant, the joinder of 19 charges from five victims caused irreparable prejudice to his case, and it unnecessarily confused the jury. Defendant suggests that the jury could have easily relied on evidence from certain offenses to satisfy elements of other offenses involving different victims. Defendant submits that the nature and of the charges also made the jury hostile to him, and he was unable to present a meaningful defense. Defendant urges that should he have desired 11Rto testify as to some counts but not others, he was effectively prevented from doing so by the *1113 joinder.[5]
The state argues that because defendant was required to make factual allegations, not conclusory ones, he did not meet his burden of proving his entitlement to severance.
La. C. Cr. P. art. 493 states:
Two or more offenses may be charged in the same indictment or bill of information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transactions connected together constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
The burden rests upon the defendant to demonstrate prejudicial joinder. State v. Machon, 410 So.2d 1065 (La. 1982); State v. Smith, 600 So.2d 745 (La. App. 2 Cir. 1992). To determine if a defendant is prejudiced by the joinder of two offenses, the district court must examine whether (1) the jury would be confused by the various counts, (2) the jury would be able to segregate the various charges and evidence, (3) the defendant would be confounded in presenting various defenses, (4) the crimes charged would be used by the jury to infer criminal disposition on part of defendant, and (5) considering the charges, the jury would be hostile towards the defendant. State v. Robinson, 49,677 (La. App. 2 Cir. 04/15/15), 163 So.3d 829, writ denied, 15-0924 (La. 04/15/16), 191 So.3d 1034. The court, however, must also weigh the possibility of prejudice to the defendant against “the |17important consideration of economical and expedient use of judicial resources.” State v. Brooks, 541 So.2d 801 (La. 1989); State v. Robinson, supra, A motion to sever is within the sound discretion of the trial court, and, absent a showing of abuse of discretion, the court’s ruling should not be disturbed on appeal. State v. Williams, 418 So.2d 562 (La. 1982).
In State v. Washington, 36,224 (La.App. 2 Cir. 09/18/02), 828 So.2d 97, writ denied, 02-2963 (La. 09/19/03), 853 So.2d 631, the defendant was charged with nine counts involving the rapes and the robberies of three different women and the indecent behavior of requiring two of the women’s children to watch the rapes. The defendant was convicted of eight counts and found not guilty of one of the armed robberies. On appeal, the defendant challenged the joinder of the offenses. The Second Circuit affirmed the convictions, noting that this Court has previously upheld the joinder for trial of separate charges for the rapes of separate victims. See State v. Harris, 33,406 (La.App. 2 Cir. 08/25/00), 765 So.2d 1230, writ denied, 00-2868 (La. 08/24/01), 795 So.2d 322. In its opinion, this Court found the presentation of the evidence chronologically and separately for each victim to be sufficient to prevent confusion of the issues. State v. Washington, 828 So.2d at 106. The Court observed that the lack of confusion is evident from the jury acquitting the defendant of one charge. Id,
Defendant failed to show that the trial court abused its discretion in denying his motion to quash. In his motion, defendant offered general arguments of undue prejudice and double jeopardy. In response, the state filed a very detailed opposition, supporting its decision to join the 19 counts, while also refuting the possibility of double *1114 jeopardy. At a hearing held on | 1sMay 28, 2014, the trial court denied defendant’s motion, finding that he failed to meet his burden of proof.
The facts show that defendant did not suffer undue prejudice from the joinder. First, the crimes were properly joined because they all involved similar lewd sexual conduct with multiple minor victims. Second, the facts of each incident were clearly distinguishable from the facts involved in the other incidents. The evidence against defendant was not complex and was presented to the jury in an orderly fashion. This allowed the jury to segregate the charges and evidence.
The jury’s verdicts as to each charge also demonstrated their ability to compartmentalize each offense and victim, as defendant was found not guilty of all offenses involving C.J. and J.C.S., but was found guilty of all offenses involving A.C., R.J., and K.S. Clearly, the jury was not confused by the nature of the crimes, and, importantly, did not superimpose the credibility of one victim over that of another.
Finally, that the jury found defendant not guilty of offenses involving C.J. and J.C.S. shows a lack of hostility towards defendant.
This assignment of error is without merit.
Excessive Sentence
Defendant argues that the imposition of two consecutive life sentences plus 30 years, to be served consecutively with the life sentences, is excessive. While he acknowledges that it is within the trial court’s discretion to order sentences to run consecutively rather than concurrently, defendant asserts that these particular sentences inflict needless pain and are purposeless.
119The state argues that the number and age of victims, coupled with the lasting emotional damage caused by defendant’s actions, do not render the sentences unconstitutionally excessive.
When a defendant fails to file a motion to reconsider sentence, the appellate court’s review of a sentencing claim is limited to the bare claim that the sentence is constitutionally excessive. La. C. Cr. P. art. 881.1; State v. Mims, 619 So.2d 1059 (La. 1993); State v. Jones, 41,449 (La.App. 2 Cir. 09/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La.App. 2 Cir. 02/25/98), 707 So.2d 164.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La. 1992); State v. Livingston, 39,390 (La.App. 2 Cir. 04/06/05), 899 So.2d 733; State v. White, 37,815 (La.App. 2 Cir. 12/17/03), 862 So.2d 1123.
A sentence violates La. Const, art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 01/15/02), 805 So.2d 166.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App. 2 Cir. 12/14/11), 81 So.3d 228.
| gnMaximum sentences are generally reserved for the “most egregious and blameworthy offenders in a class.” As a *1115 general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 (La. 02/15/08), 974 So.2d 665; State v. Hogan, 47,993 (La.App. 2 Cir. 04/10/13), 113 So.3d 1195, writ denied, 13-0977 (La. 11/08/13), 125 So.3d 445.
La. C. Cr. P. art. 883 states that when two or more convictions arise from the same act or transaction, or constitutes part of a common scheme or plan, the terms of the imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, the trial court is given the discretion to impose consecutive penalties in cases where the offender’s past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. McDuffey, 42,167 (La.App. 2 Cir. 06/20/07), 960 So.2d 1175, writ denied, 07-1537 (La. 01/11/08), 972 So.2d 1163; State v. Walker, 00-3200 (La. 10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App. 2 Cir. 03/05/03), 840 So.2d 675. The factors considered when determining whether to impose concurrent or consecutive sentences include: (1) the defendant’s criminal history, (2) the gravity or dangerousness of the offense, (3) the viciousness of the crimes, (4) the harm done to the victims, (5) whether the defendant constitutes an unusual risk of danger to the public, (6) the potential for the defendant’s rehabilitation, and (7) whether the defendant has received a benefit of a plea bargain. State v. McDuffey, 960 So.2d at 1181-82.
1 ai Furthermore, a trial court’s failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support the consecutive sentences imposed. State v. Hampton, 38,-017 (La.App. 2 Cir. 01/28/04), 865 So.2d 284, writs denied, 04-0834 (La. 03/11/05), 896 So.2d 57, 04-2380 (La. 06/03/05), 903 So. 2d 452.
Since the charges in the instant case span an 18-year period, legislative changes during that time resulted in varying sentencing ranges for some of the offenses. The sentencing ranges for the 12 counts of conviction are as follows:
*1116 [[Image here]]
UaThe consecutive sentences imposed by the trial court are not excessive by constitutional standards. As previously stated, the trial court is granted wide discretion in determining what sentence to impose and, when dealing with multiple sentences, *1117 whether said sentences will run concurrently with, or consecutively to, each other. Generally, sentences resulting from convictions that arise from the same act, transaction, or constitute a common scheme will run concurrently with each other unless the trial court states otherwise.
Defendant was convicted of crimes involving three victims. The crimes occurred at various points over an 18-year period, and the crimes against the victims were independent of each other. As noted above, Counts 1 through 3 involved A.C. The trial court ordered that all sentences for these counts would run concurrently with each other. Similarly, Counts 4 through 8 involved R.J., and the trial court ordered sentences for these to run concurrently with each other. Finally, Counts 16 through 19 involved K.S.; these sentences were ordered to run concurrently with each other. However, the trial court then ordered that the concurrent sentences imposed for Counts 4 through 8 run consecutively to the concurrent sentences imposed for Counts 1 through 3, and Counts 16 through 19 run consecutively with the concurrent sentences imposed for Counts 1 through 8.
| ¾⅞At sentencing, the trial court examined defendant’s criminal history, which consisted of convictions for shoplifting, aggravated battery (pled down from attempted second degree murder), and disturbing the peace. The trial court also examined defendant’s family background, work and educational history, military service, and the previously ordered PSI. In sentencing defendant, the trial court justified its decision based on defendant’s pattern of sexual abuse, his need for correctional treatment, and the use of his position or status to take advantage of young girls. Additionally, the court stated that any lesser sentence would deprecate the seriousness of defendant’s crimes and that there were no mitigating factors. The sentences as imposed do not shock the sense of justice.
This assignment of error is without merit.
Pro se Assignment of Error-Ruling on Jury Instructions Objection
Defendant argues that he should only have been convicted of aggravated rape by a unanimous jury verdict, and that the trial court erred in instructing the jury that defendant could be convicted of aggravated rape by a vote of ten to two in favor of guilt. Defendant, who received two consecutive life sentences, equates a life sentence to the death penalty because such a sentence can only be completed at death. Consequently, he argues that a life sentence, like the death penalty, should only be imposed after a unanimous finding of guilt.
Louisiana Constitution article 1, § 17(A) provides in part that a case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. See also Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L]^Ed.2d 184 (1972); La. C. Cr. P. art! 782(A); State v. Bertrand, 08-2216 (La. 03/17/09), 6 So.3d 738; State v. Henry, 47,323 (La.App. 2 Cir. 07/25/12), 103 So.3d 424, writ denied, 12-1917 (La. 03/08/13), 109 So.3d 356. This assignment of error is without merit.
Error Patent
When sentencing defendant for Count 1, aggravated rape, the court failed to specify that the life sentence was to be served at hard labor. Under the statute, any person convicted of aggravated rape shall be sentenced to life at hard labor without the benefit of probation, parole, or suspension of sentence. La. R.S. 14:42(D).
When sentencing defendant for Count 19, cruelty to a juvenile, the court imposed *1118 the sentence without the benefit of probation, parole, or suspension of sentence. In accordance with the statute, the sentence should be imposed with benefits. La. R.S. 14:93(D).
Therefore, we amend defendant’s sentence for Count 1 to reflect that it will be served at hard labor, and we amend defendant’s sentence for Count 19 to reflect that it shall be served with the benefit of probation, parole, or suspension of sentence.
CONCLUSION
For the foregoing reasons, all 12 of defendant’s convictions are affirmed. All sentences, including those for Count 1 and Count 19 as amended herein, are affirmed. Defendant’s sentence for Count 1 is amended to reflect that it must be served at hard labor. Defendant’s sentence for Count 19 is amended to grant benefits.
CONVICTIONS AFFIRMED; AS AMENDED, ALL SENTENCES ARE AFFIRMED.

. Because the offenses occurred over an 18-year time period, some sentences for the same crimes vary according to the statute in effect at the time of each offense.

. Defense counsel filed a timely brief on defendant’s behalf. Defendant, however, also filed an untimely pro-se brief on January 24, 2017.

. Defendant's father testified that defendant did not get this tattoo until he went into the military, approximately one year later.

. J.C.S. alleged that she had been sexually abused by defendant. Defendant was acquitted of these charges, which were Counts 12-15, at trial. Mrs. S. testified that she initially believed that her ex-husband had fabricated the allegations involving J.C.S. in an effort to discredit Mrs. S. during their acrimonious divorce and custody proceedings. However, she questioned her doubts once K.S.'s allegations against defendant were made, Mrs. S. testified that she had no knowledge whether K.S.’s allegations were true.

. There was extensive colloquy between the parties and the trial court regarding the number of charges against defendant for single incidents. Judge Ellender ordered the state to file a memorandum justifying its decision on how it billed the charges, and after reviewing the issue himself, Judge Ellender found the number of charges to be permissible.