731 So.2d 463 (1999)
STATE of Louisiana, Appellee,
v.
Cantreal Dewayne MICKENS, Appellant.
No. 31,737-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*465 Peggy J. Sullivan, Louisiana Appellate Project, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Susan E. Hamm, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, GASKINS and CARAWAY, JJ.
NORRIS, Chief Judge.
Charged with two counts of molestation of a juvenile when the offender has control or supervision, La. R.S. 14:81.2, Cantreal Dewayne Mickens was found guilty by a jury of the lesser included offense of indecent behavior with a juvenile, La. R.S. 14:81 on one count and as charged on the other. The District Court sentenced him to serve seven years hard labor for the indecent behavior conviction and ten years hard labor on the molestation conviction. The sentences were ordered to be served consecutively and without eligibility for good time diminution as a sex offender pursuant to La. R.S. 15:537. Mickens now appeals, urging several assignments of error. For the reasons expressed, we affirm.

Procedural Background
Suspecting that her live-in boyfriend of three and one-half years, Cantreal Dewayne Mickens, might be molesting her then 13 year old daughter, C.C., as well as her three other children, Vicki Criff confronted the minors regarding her suspicions on October 14, 1997. Upon learning that Mickens, age 24, had molested C.C. on at least two occasions over a seven month period, she called the Ouachita Parish Sheriff's Office. That same day, Mickens was arrested for the offenses and charged by the State with two counts of molestation of a juvenile when the offender has control or supervision between April and October 1997.
After a two day trial, a six person jury found Mickens guilty of indecent behavior with a juvenile on one count and molestation of a juvenile when the offender has control or supervision on the other count. After ordering and reviewing a pre-sentence investigation report ("PSI"), the district judge sentenced Mickens to the maximum seven year hard labor sentence on the indecent behavior conviction and to 10 years on the molestation conviction, the sentences to run consecutively. Additionally, at the request of the state, the court also denied Mickens eligibility for good time diminution of both sentences pursuant to La. R.S 15:537. After the denial of a timely motion for reconsideration of sentence, this appeal ensued urging assignments of error relative to sufficiency of the evidence, erroneous admission of hearsay evidence, and excessiveness of sentence.[1]

Discussion: Sufficiency of the Evidence
By his fourth assignment of error, Mickens contends the evidence is not sufficient to support either conviction. We disagree.
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first resolve the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La.1992); State v. Evans, 29,675 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, writ denied, 97-2942 (La.1/9/98), 705 So.2d 1121. The constitutional standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. This standard, initially enunciated in Jackson and now legislatively embodied in La. *466 C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983); State v. Daniels, 614 So.2d 97 (La. App. 2d Cir.), writ denied, 619 So.2d 573 (1993). This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
To convict a defendant of molestation of a juvenile, the state must prove: (1) the defendant is a person over the age of 17; (2) the victim is a person under the age of 17; (3) there is an age difference of at least two years between the persons; (4) the defendant committed a lewd or lascivious act upon the person or in the presence of the victim; (5) the defendant committed such act with the intention of arousing or gratifying the sexual desires of either the defendant or the victim; and (6) the defendant committed the act either by the use of (a) force, violence, duress, menace, psychological intimidation, or threat of great bodily harm, or (b) influence by virtue of a position of control or supervision over the victim. La. R.S. 14:81.2; State v. Roberts, 541 So.2d 961 (La.App. 2d Cir.1989). The crime of indecent behavior with a juvenile is identical to the crime of molestation of a juvenile except that it does not require proof of the use of any type of force or influence as set forth in element (6) above. La. 14:81; State v. Hillman, 613 So.2d 1053 (La.App. 3d Cir.), writ denied, 617 So.2d 1181 (1993); see also, State v. Sturdivant, 27,680 (La.App.2d Cir.2/28/96), 669 So.2d 654.
The defendant in brief does not argue that the state failed to prove any specific element of either crime of conviction beyond a reasonable doubt but argues that the only real proof he committed the crime was C.C.'s own testimony. He contends that "[t]he evidence as presented, resting on the testimony of a young girl, faced with restrictions on her freedom was not sufficient to prove beyond a reasonable doubt that [defendant] was the person who engaged in sexual activities with [C.C.]."
When the defendant asserts that he was not the perpetrator, or he remains silent, the State bears the burden of negating any reasonable probability of misidentification. State v. Powell, 27,959 (La.App. 2d Cir.4/21/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Even so, the appellate court must not substitute its opinion of the facts for that of the jury. It is the province of the jury to resolve conflicting inferences from the evidence. State v. Free, 26,267 (La.App.2d Cir.9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175; see also, State v. Davis, 97-331 (La.App. 3d Cir.10/29/97), 702 So.2d 1014, writ denied, 97-2990 (La.11/6/98), 726 So.2d 919. Thus, upon review we must consider all the evidence in the light most advantageous to maintaining a verdict. State v. Free, supra. Furthermore, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a defendant's conviction. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992), and citations therein; State v. Gradick, 29,231 (La.App.2d Cir.1/22/97), 687 So.2d 1071. This is equally applicable to the testimony of sexual assault victims. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808; State v. Free, supra; State v. Standifer, 513 So.2d 481 (La.App. 2d Cir.1987). Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. State v. Turner, 591 So.2d 391 (La.App.2d Cir.1991), writ denied, 597 So.2d 1027 (1992).
At trial, C.C., who was the last witness, testified that Mickens lived in the home and regularly babysat her and her siblings *467 while her mother worked; he would also discipline them by grounding and spanking them. She stated that she believed that she had to do what he said. C.C. related that defendant first began touching her inappropriately shortly after they moved into a residence on Tanglewood Drive in Monroe. While not remembering the exact dates, she said that on the first occurrence defendant placed his foot between her legs on her "private" while they sat on the couch. On later occasions, defendant would wrestle with her, touching her "behind," "breasts," and "private part," sometimes under her clothing.
Next, C.C. testified that the touching turned into something more during one of the wrestling incidents. After defendant started touching her on that occasion, defendant pulled a sheet over C.C.'s head, held her wrists down and began having sex with her. The victim explained that Mickens got on top of her and "put his private parts in [hers]" and that he continued even after she asked him to stop. Defendant told her she would get in trouble if she told anyone. C.C. noted that she found blood in her panties the next morning. She further related that Mickens did the same thing to her on another occasion and stated that she experienced pain both times. C.C. testified that she could not remember the date or month either of these episodes took place. However, she was able to recall that in the early morning on the date Mickens was arrested he had wrestled with her and had began touching her on her breasts and private parts just prior to her mother entering her bedroom, the event which ultimately led C.C. to reveal the sexual assault.
Asked why she did not reveal Mickens's crime to her mother, C.C. stated that she was scared at first. She indicated that she believed that her mother loved defendant and wanted to marry him. Besides being afraid her mother would believe defendant over her, C.C. did not want to make her mother unhappy. However, she testified that she finally told her cousin, Curitessa, defendant had touched her, indicating to Curitessa that she had lied when she denied this to her mother just minutes earlier. She further stated that she asked Curitessa not to tell anyone as she was still scared. Nonetheless, Curitessa told the victim's mother. Thereafter, all on the day of Mickens's arrest, she told her grandmother and the investigating officer that defendant had sexually assaulted her. When asked at trial, C.C. specifically denied making up her allegations because defendant had grounded her.
In spite of defendant's contentions, the State presented considerable evidence to support C.C.'s testimony even before she took the stand. Vicki, C.C.'s mother, testified that she, defendant, and her four children moved into the Tanglewood residence in April 1997. During the first three months, defendant was unemployed and cared for the children while Vicki, a health care worker, was at work. She indicated that Mickens had been allowed to discipline her children prior to the move. Thereafter, she generally disciplined the children, but defendant was still in charge when she was not at home, being allowed to ground them in October 1997 and having previously been allowed to spank them. In fact, Vicki noted that defendant had grounded C.C. for having bad grades just a week or two prior to his arrest.
Vicki stated that in October 1997, she worked some 72 hours a week and that defendant continued to care for the children even though he was then working at Barnhill's Country Buffet. She noted that despite her request, defendant would not allow her to spend time with the children, having her bath water ready upon her arrival at home and telling the children to leave her alone because she was tired. Thereafter, Mickens would tell her to go to sleep.
At that time, Vicki indicated that she became suspicious of defendant. In particular, she related an incident that occurred the night before his arrest. Early that morning between 3:30 and 4:00 a.m., she *468 discovered him walking out of her daughter's bathroom, which was accessible only through the victim's bedroom; generally she and defendant used another bathroom which was "straight across" the hall from their bedroom while the children used this one. As she entered the room, she found her eight-year-old daughter, V.C., sitting on the floor "with her legs open," C.C. standing near the closet in her night clothes, and Mickens in boxer shorts and a muscle shirt. When Vicki scolded the girls for being up past their bedtime, defendant hollered angrily in response, accusing Vicki of suspecting him of doing "something to them or something." Vicki described him as "shaking and nervous looking." She let the matter drop, to avoid a violent scene with the children present.
The next afternoon, when Mickens was at work and not present, Vicki asked the children if he had done anything to them. They denied it, but in a few minutes she learned otherwise. Curitessa phoned, and the girls' grandmother, Betty Criff, came to the house and talked to C.C. Vicki testified that she was visibly upset at hearing their information and started "screaming and hollering" after each report.
Curitessa testified next regarding her October 14, 1997 phone conversation with C.C. She stated that C.C. answered the phone when she called the house and told Curitessa she had something to tell her. C.C. then stated that her mother had just asked moments earlier if defendant had been touching her but that she had told her mother "no" when she was really telling a "story." Curitessa then testified that she asked C.C. what she meant by telling a story and C.C. replied that Mickens had been "touching on her." Shortly thereafter, Curitessa informed her aunt, Vicki, what C.C. had said.
Katherine Morgan, Vicki's sister, and her mother, Betty Criff both gave brief testimony. Katherine indicated that she went down to Vicki's house shortly after they discovered C.C. had been molested. While there, she took two phone calls from defendant, minutes apart, and told him Vicki could not talk to him. Not long after, defendant arrived and was arrested. Betty Criff testified that she came to Vicki's house upon receiving a call from Katherine on the day of defendant's arrest. Upon arriving at the residence, she told C.C. she wished to speak to her and then asked if Mickens had molested her. Without relaying to the court the content or nature of C.C.'s responses, Betty stated that Vicki became visibly upset upon being told what C.C. had said.
The investigating police officers from the Ouachita Sheriffs Office testified for the State regarding their involvement in defendant's case. The first officer to respond was Michael Judd, a deputy sheriff. Upon arriving to a complaint of molestation of a juvenile, he spoke to several family members and the victim. Thereafter, he stopped defendant upon his arrival in the driveway, Mirandized him, and placed him under arrest.
Dewayne Leonard, a criminal investigator, also responded to the complaint. After defendant's arrest, he interviewed the victim at the courthouse annex. He testified that he did not video C.C.'s interview because he felt she was "sufficiently articulate enough to talk on her own" and was satisfied that she was able to identify and understand the different body parts of males and females. He also interviewed Vicki. He stated at trial that based on the interviews he believed defendant was the perpetrator. The investigator also noted that no rape kit had been performed that night because of the lapse of time between the alleged incident and the report.
Dr. Meade O'Boyle, a pediatrician and expert in child abuse, testified that she interviewed and examined C.C. on October 21, 1997. Using a colposcope, she viewed and photographed C.C.'s vaginal area and hymenal ring; the photos were introduced into evidence. She testified that C.C.'s hymenal ring was not intact, bearing scars at the two, six, and seven o'clock positions. *469 She felt this was significant, explaining that scaring between three and nine o'clock is indicative of penile penetration and that use of fingers will produce scars around the two o'clock position. Thus, she indicated that C.C.'s scars are consistent with both intercourse and fingers "going upward."
In further testimony, O'Boyle noted that based on her extensive experience in dealing with sexually abused children she felt the scarring was indicative of tearing and bleeding upon penetration. Additionally, finding C.C. to be sexually immature based on the physical examination, she noted that the experience would have been very painful for the child. She noted that the physical findings indicate force on an unwilling participant and that she was sexually inactive except for the forced activity. However, Dr. O'Boyle could not determine if the scars had been repeatedly torn or exactly when they occurred, explaining that rapid healing of the vagina only allows her to place the age of the scars as being older than four or five days.
Based on her examination, Dr. O'Boyle's opinion was that C.C. had been molested by both penile penetration and fondling. She stated that all her findings were consistent with the history C.C. gave, particularly noting that C.C. indicated to her that she bled the first time but not the second.
Based on this evidence, a rational fact finder could conclude that Mickens committed upon C.C. the crimes of molestation of a juvenile on one occasion and indecent behavior with a juvenile on another occasion. The prosecutor and defense counsel stipulated that C.C. was under the age of 17 at the time of the offense, that defendant was over the age of 17, and that there was an age difference of more than two years between the two. It is also clear that these crimes occurred as charged in the bill of information between April 1997, when defendant and his girlfriend's family moved to the Tanglewood address, and October 14, 1997, the date of his arrest. Even so, the date and time of the offense are not essential elements of the crimes for which defendant was convicted. See, La.C.Cr.P. art. 468; State v. Case, 357 So.2d 498 (La.1978); State v. Marler, 560 So.2d 537 (La.App. 1st Cir.), writ denied, 566 So.2d 969 (1990).
Concerning the more relevant proof supporting defendant's conviction, C.C. clearly described two occasions when defendant molested her through inappropriate touching and two other occasions where defendant actually had sexual intercourse with her. Her testimony is corroborated by other witnesses as well as the medical evidence. Of particular importance, C.C.'s mother, Vicki, caught defendant in C.C.'s bedroom during the early morning hours on one occasion, prompting from him an immediate defensive and nervous response. C.C.'s story was confirmed and shown to be consistent by the testimony of her cousin, Curitessa. Additionally, C.C. and her mother clearly established Mickens's role as babysitter, disciplinarian, and pseudo-stepfather; this supports the essential element of control or supervision. See, State v. Hillman, supra; State v. Shelton, 545 So.2d 1285 (La.App. 2d Cir.), writ denied, 552 So.2d 377 (1989). Finally, the medical evidence showed C.C. had been obviously molested in a manner consistent with her trial testimony and the history she gave to Dr. O'Boyle. Thus, reviewing all the evidence in the light most favorable to the State, we find no internal contradiction or irreconcilable conflict between C.C.'s testimony and the other evidence which would justify overturning the jury's rational decision regarding C.C.'s credibility.[2] Thus, the record is sufficient to find beyond a reasonable doubt every essential element of the offenses of molestation of a juvenile and indecent behavior *470 with a juvenile. This assignment lacks merit.

Hearsay Evidence
By his second assignment of error, Mickens contends that the trial court erred in allowing Curitessa to testify as to what C.C. told her during their phone conversation where C.C. first reported that she had been molested. Put differently, he contends that an initial complaint of sexually assaultive behavior may not be admitted under La. C.E. art. 801D(1)(d) as non-hearsay prior to the victim having testified. We find no merit in this assignment.
La. C.E. art. 801D(1)(d) provides:
A statement is not hearsay if ... the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... [c]onsistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
Reviewing the testimony of Curitessa and C.C., we have no trouble concluding that Article 801D(1)(d) was satisfied because (1) Curitessa's account of what C.C. told her in their phone conversation was consistent with C.C.'s subsequent trial testimony, and (2) C.C. was subject to cross-examination on the statement. See, State v. Small, 29,137 (La.App. 2d Cir.1997), 693 So.2d 180. Defendant concedes this fact. Nonetheless, he maintains that because Curitessa testified first it was impossible for the state to lay a proper foundation; he contends that under Article 801D(1)(d), the declarant, C.C., must first testify consistently with the cousin's account and be subject to cross examination before the foundation can be laid. We disagree.
La.C.Cr.P. article 773 provides that "[n]either the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced," subject to the procedures set forth in the Louisiana Code of Evidence for laying a foundation. La. C.E. article 104B provides that "when the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."
Applying these principles to the present case, we find no error in the trial court's admission of C.C.'s initial complaint of sexual assault to Curitessa prior to C.C.'s testimony. Clearly, under C.E. art. 104B, the court is given wide discretion in allowing evidence to be introduced "subject to" fulfillment of a condition required for its admission, i.e., allowing the State to "connect it up" at a later point. As conceded by defendant, the State met these conditions when C.C. testified in the later portion of the trial. Defendant was not prejudiced by its earlier introduction. See, La. C.E. art. 103; C.Cr.P. art. 921. Indeed, in applying C.Cr.P. article 773 to similar circumstances, the supreme court has concluded that no error exists when the State did in fact later establish all the conditions necessary for admission of an earlier introduced item of evidence or testimony. State v. Ryan, 358 So.2d 1274 (La.1978); State v. Mullins, 353 So.2d 243 (La.1977). The order of proof is to be left to the determination of the offering party subject only to the general discretion of the trial court. State v. Mullins, supra. Moreover, the phrase "subject to cross-examination" in article 801D(1)(d) should not be so narrowly construed as to require that the cross-examination actually have taken place at the time the statement is introduced. It only requires that the defendant have the opportunity to examine the witness at some point. See, G.W. Pugh, R. Force, G.A. Rault, & K. Triche, Handbook on Louisiana Evidence Law, Authors' Note (3) to C.E. art. 801, p. 458 (1998). Nevertheless, considering the risk that a subsequent witness might not testify consistently with the testimony of a previous witness, we caution that it would be the better practice of the State to have the sexual assault victim testify prior to any *471 witness to which the victim made an initial report of sexually assaultive behavior.

Excessive Sentence
By his third assignment of error, Mickens challenges his consecutive seven year and ten year hard labor sentences for one count of indecent behavior with a juvenile and one count of molestation of a juvenile and the denial of his eligibility for good time diminution as excessive.
In reviewing claims of excessiveness, an appellate court uses a two-pronged analysis. First, the record must show that the district court took cognizance of the criteria set forth in La. C.C.Pr. art. 894.1. The court is not required to list every aggravating or mitigating circumstance, as long as the record shows an adequate consideration of the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Adger, 30,215 (La. App.2d Cir.12/10/97), 707 So.2d 1000. The objective of article 894.1 is the articulation of a factual basis for sentence, and not rote recitation of the guidelines. When the record clearly shows an adequate factual basis for sentence, remand is not necessary. State v. Lanclos, 419 So.2d 475 (La. 1982); State v. Adger, supra.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are weighed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Adger, supra. A district court has wide discretion to sentence within the statutory limits, and such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Square, 433 So.2d 104 (La. 1983); State v. Lindsey, 28,016 (La.App.2d Cir.4/3/96), 671 So.2d 1155. In selecting a proper sentence, the trial court is not limited to considering only the defendant's prior convictions but may properly review all prior criminal activity. State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
At sentencing, the trial court set forth lengthy and thorough reasons for his sentence. Therein, the court noted its review of the PSI, a letter from the defendant, and various letters and phone calls from his mother and others on behalf of the defendant and his mother. The court stated that it did not consider Mickens, 24 years old at the time of the offense, to be a youthful offender. The court then observed defendant's extensive misdemeanor criminal history including: convictions for trespassing, carrying a concealed weapon, resisting arrest, and DWI; arrests for disturbing the peace, theft, simple battery, loitering, resisting arrest, damage to property, and aggravated assault; and revocation of his parish probation. At least one of these offenses included a battery upon the then pregnant mother of defendant's two children. Additionally, the court considered defendant's social history: a normal upbringing by parents who separated when he was 14 years old; quitting school after the tenth grade because he was running around with the wrong crowd; a very sporadic work history; and problems with alcohol.
In looking at the circumstances of the crimes for which defendant was convicted, the court took particular note of the fact that the victim's mother was working long hours as the principal breadwinner in the home and had entrusted the care of her children to defendant in a position as stepparent, including supervision and discipline of the victim. The court next considered that the offenses involved deliberate cruelty to the victim, threats against the victim, use of his position to facilitate their commission, occurrences over an extended period of time, and permanent scarring of the victim and family as evidenced by their *472 attending counseling and C.C.'s trouble with her grades. The court also noted that this was a severe case committed against a "very youthful victim, very shy, very intimidated child" who appeared younger than her age; the judge also recognized there was evidence another young girl in the home had been molested.[3] More significantly, the court drew attention to defendant's total failure to take responsibility for his crime in that he continued to deny his actions even on the day of sentencing by placing blame on the child and accusing her of lying even in face of the trial testimony and credibility of the victim. In its final analysis, the court classified defendant's conduct as reprehensible and depraved and involving actions worse than the offenses charged; the court particularly noted that had the acts occurred less than a year earlier defendant could have been prosecuted for aggravated rape and faced a mandatory life sentence. Therefore, it was the district judge's conclusion that any lesser sentence would deprecate the seriousness of the crime.
The penalty for molestation of a juvenile when the offender has control or supervision is a minimum of one year and a maximum of 15 years, with or without hard labor, or a fine of not more than $10,000. La. R.S. 14:81.2C. The penalty for indecent behavior with a juvenile is a fine of not more than $5,000 or imprisonment, with or without hard labor, for not more than seven years. In the present case, Mickens received a sentence of only two-thirds of the maximum on the molestation charge and a maximum sentence on the indecent behavior charge with the sentences to run consecutively. No fine was imposed on either count. Even though the sentences were run consecutively, he did not receive the maximum possible sentence. Additionally, under La. R.S. 15:537, the trial court is given discretion to deny diminution of sentence for good behavior in cases involving convictions for sexual offenses.
Reviewing the record as a whole, we do not find these sentences to be excessive. While the lower court's sentencing considerations encompass some aspects of the crimes which are also elements thereof and factors that arise out of the nature of the offenses, the sentencing judge clearly considered many other factors and tailored all his considerations to the specific circumstances involving defendant's case, including the immaturity of the victim for her age.[4] In particular, we note that defendant, who was in a common-law relationship with the victim's mother, clearly committed egregious acts in violating his paternal role in the commission of these crimes on his "stepdaughter." See, State v. Adkins, 31,300 (La.App.2d Cir.11/9/98), 721 So.2d 1090. The commission of such offenses by one in such a close relationship to the victim is particularly offensive to society as a whole and makes this different from the ordinary situation. See, State v. Viree, 95-176 (La.App. 3d Cir.3/6/96), 670 So.2d 733, writ denied, 96-885 (La.9/20/96), 679 So.2d 431; State v. Polkey, 529 So.2d 474 (La.App. 1st Cir.), writ denied, 536 So.2d 1233 (1989). Additionally, on this record, two counts of forcible rapeeach carrying a maximum of 40 years at hard laborcould have been sustained, *473 notwithstanding, the fact that the victim described two other incidents which were not even charged and that the evidence easily would have supported a second conviction for molestation rather than indecent behavior. Finally, regarding the issue of consecutive sentences, such terms of imprisonment are not uncommon in cases involving acts of molestation over an extended period of time by persons in the same household as the victim. See, State v. Ray, 96-1297 (La.App. 3d Cir.4/2/97), 692 So.2d 1292, writ denied, 97-1279 (La.1/9/98), 705 So.2d 1090, and authorities therein; State v. Davis, 514 So.2d 757 (La.App. 2d Cir.1987). The imposition of such sentences is well within the discretion of the trial judge under La.C.Cr.P. article 883 and are not excessive on this record. See, State v. Ester, 490 So.2d 579 (La.App. 2d Cir.1986).
Simply put, these sentences of seven and ten years at hard labor, run consecutively and without benefit of diminution for good behavior do not shock our sense of justice for this sex offender. Therefore, they are not excessive.

Decree
For the above reasons, Cantreal Dewayne Mickens's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] In his original assignments of error, defendant urged error in the failure of the trial court to grant a requested mistrial after the State extracted a "promise to convict." However, by supplemental brief, defense counsel now abandons that assignment, finding no non-frivolous issues regarding the prosecutor's voir dire statements.
[2] We note that the trial judge who had an opportunity to observe the witness indicated at defendant's sentencing that he found C.C.'s trial testimony to be credible in response to Mickens's continued accusations that she had lied.
[3] In brief, defendant contends the record contains no evidence involving the molestation of any of the other children in the household. However, notwithstanding the mother's testimony that she found her other daughter sitting in an unusual position on the floor of the victim's room the night she became suspicious of defendant, the State's response to defendant's discovery motion contains medical records which indicate C.C. was not the only child in the home who showed physical signs of sexual abuse.
[4] In cases involving the now repealed Felony Sentencing Guidelines, this court noted that the guidelines specifically prohibited consideration of essential elements of the offense of conviction as aggravating factors. See, i.e., State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993). Nonetheless, we can find no case not controlled by the guidelines prohibiting such consideration. Indeed, the third circuit has recently noted that C.Cr.P. art. 894.1 contains no such prohibition. See, State v. McDowell, 98-391 (La.App. 3d Cir.10/7/98), 720 So.2d 735.