DREW, J.
Thedious Dewayne Woods[1] was charged with two counts of attempted second degree murder, in violation of La. R.S. 14:27 and La. R.S. 14:30.1. After a jury trial, he was convicted of the responsive verdict of aggravated battery as to Count One and not guilty as to Count Two. The defendant was sentenced to nine years at hard labor. He filed a motion to reconsider sentence, which was denied. On appeal, he challenges the sufficiency of the evidence. We affirm in all respects.
FACTS
The defendant was charged with attempting to murder Johnny Edwards and Cortez Sheridan. At trial, the state called three witnesses. Monroe Police Department Corporal Maynard Gray testified:
• on September 20, 2015, he was dispatched to an empty lot south of the Valero gas station off Highway 565/165 around midnight;
• there, he observed Edwards leaning on the front of a red truck, bleeding from a gunshot wound to the chest;
• he called for an ambulance, and briefly questioned Edwards, who identified the defendant as the man who shot him;[2]
• he secured the scene and fruitfully checked for spent shell casings;
• he noted that another "SUV-type" vehicle was parked next to the red truck;
• no guns were found at the dark scene, and flashlights were used;
• the police found no drugs or drug paraphernalia, but cash money and beer bottles and cans were found;
• he went to the defendant's home, several blocks away;• only the defendant's mother was there, and she was unaware of his location;
• his involvement in the investigation ended the night of the shooting, and
• he turned the case over to Detective Jeremy Kent.
Cortez Sheridan testified:
• he knew Edwards for seven to eight years prior to the trial;
• Edwards died approximately a week before the trial;
• he had never seen Woods prior to the night of September 20, 2015;
• on that night, he met Edwards at the empty lot around 9:00 p.m.;
• Edwards arrived before Sheridan, who parked his vehicle next to his red truck;
• they sat in the lot for several hours prior to the shooting;
*1130 • about 20 people were gathered in small clusters on the lot, including the defendant, who arrived at the lot around 10:00 p.m.;
• the defendant was sitting under a tree with others, muttering and drinking;
• the defendant began speaking in an angry and annoyed tone;
• he later walked to a gas station, and as he returned, the defendant came up to him and Edwards and accused Sheridan of disrespecting his mother;
• Sheridan responded that he did not know the defendant's mother, but apologized;
• his response did not please Woods, who came toward him;
• when he prepared to defend himself, the defendant returned to the tree;
• Woods quickly returned and produced a revolver, pointing it at the two of them;
• Sheridan once again told Woods that he did not mean to disrespect his mother;• when Woods was about eight feet away from them, he said, "Somebody gonna get shot tonight. Might as well be one of y'all";
• a drunken Woods pointed the pistol at him and pulled the trigger;
• the revolver misfired, and Edwards tried to calm Woods down;
• Woods, still angry, accused Edwards of disrespecting his girlfriend;
• Woods waved the gun around, pointed it at him again, and pulled the trigger;
• when the pistol misfired again, Sheridan ran, abandoning his vehicle;
• as he fled, Edwards was hitting Woods, trying to disarm him;
• he heard three or four gunshots but did not see Edwards get shot;
• he identified Edwards' red truck, noting bullet holes in it from that night;
• he called 911, attempted to return to the scene, but was stopped by police;[3]
• he was not surprised that the police did not find shell casings as revolvers do not discharge spent casings as do semiautomatic weapons; and
• the lot was dark, but had enough light to clearly identify everyone there.
Detective Jeremy Kent testified:
• an employee of the Monroe PD, he was lead investigator on this case;
• once assigned, he went straight to the hospital to question Edwards;
• he saw a gunshot wound to Edwards' upper right chest area;
• no weapons or any illegal substances were found on the victim;
• he told him that he was shot by Woods before he ran off with Sheridan;
• Edwards made several unsuccessful attempts to locate the defendant;• he eventually contacted Woods on the telephone, but the defendant refused to cooperate with the investigation or provide his location;
• an arrest warrant was issued and Woods was arrested within days;
• no gun or shell casings were recovered from the crime scene;
• his agency's failure to recover shell casings at the scene was not surprising *1131 as revolvers do not discharge spent shell casings upon firing;
• a revolver will keep the spent shell casing in the "wheel," which the user must manually remove before inserting new bullets; and
• Edwards and Sheridan came in about 10 days later to give their statements.[4]
The state rested, and the defense called no witnesses.
The jury found Woods guilty of the responsive verdict of aggravated battery as to Count One and not guilty as to Count Two. The trial court ordered a presentence investigation report. Woods filed timely motions for post-verdict judgment of acquittal and for a new trial, both of which were denied. The defendant was sentenced to nine years at hard labor, with credit for time served. Woods filed a motion to reconsider his sentence, which was denied.
DISCUSSION
Assignment of Error: Insufficiency of Evidence
The defendant argues on appeal:
• the state failed to establish beyond a reasonable doubt that he shot Edwards;
• as Sheridan and Edwards were running away, "someone" fired shots;
• Sheridan did not see Edwards get shot;
• Edwards' truck was in the opposite direction from which the alleged victims ran;• nonetheless, the truck was struck multiple times by bullets;
• the jury was unduly influenced by the testimony of the two law officers;
• no witness testified that Woods shot at or actually shot Edwards; and
• the state failed to introduce Edwards' statement that Woods shot him at trial.
The state responds that the evidence presented at trial, viewed in a light most favorable to the prosecution, was sufficient to support Woods' conviction. Additionally, there is no other logical explanation for the injuries to Edwards.
Our law on appellate review of sufficiency questions is well settled.[5]
*1132 A battery includes the "intentional use of force or violence upon the person of another." La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Brown , 24,840 (La. App. 2 Cir. 5/5/93), 618 So.2d 629, writ denied , 93-1449 (La. 9/24/93), 624 So.2d 1222.
When the defendant asserts that he was not the perpetrator, or remains silent, the state bears the burden of negating any reasonable probability of misidentification. State v. Powell , 27,959 (La. App. 2 Cir. 4/12/96), 677 So.2d 1008, writ denied , 96-1807 (La. 2/21/97), 688 So.2d 520 ; State v. Mickens , 31,737 (La. App. 2 Cir. 3/31/99), 731 So.2d 463, writ denied , 99-1078 (La. 9/24/99), 747 So.2d 1118. It is the province of the jury to resolve conflicting inferences from the evidence. State v. Mickens, supra . In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness-if believed by the trier of fact-is sufficient support for a requisite factual conclusion. State v. Jones , 34,863 (La. App. 2 Cir. 8/22/01), 794 So.2d 107, writ denied , 01-2648 (La. 8/30/02), 823 So.2d 938. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. State v. Mickens , supra.
In this case, there was sufficient circumstantial evidence presented to support Woods' conviction of aggravated battery.
The state was required to prove beyond a reasonable doubt that Woods intentionally used force or violence upon Edwards with a dangerous weapon. Sheridan testified that Woods pointed a revolver at him and twice pulled the trigger, misfiring both times. As he ran away, Sheridan saw Edwards try to disarm Woods. Six or seven seconds later, he heard three or four gunshots behind him.
While Sheridan did not actually see Woods shoot Edwards, the timing between Woods shooting at Sheridan for the second time, Sheridan running away, and then hearing gunshots provide strong circumstantial evidence that Woods was the shooter. Sheridan's testimony establishes that only Woods was in possession of the revolver seconds before Edwards was shot. There is no evidence that any other person at the scene had a gun or threatened Edwards and Sheridan. Sheridan's story is further corroborated by Cpl. Gray's and *1133 Det. Kent's testimonies, who determined that Woods was the man who shot him.
Woods' intent to harm Sheridan and Edwards can be discerned from Woods drunkenly muttering, "Somebody gonna get shot tonight. Might as well be one of y'all." Also, by introducing the defense of intoxication, Woods essentially admitted to being at the scene on September 20, 2015.
Ultimately, it was the jury's decision to believe Sheridan's testimony and draw conclusions based on the circumstantial evidence provided. As the jury's decision was based on a credibility call, it cannot be disturbed on appeal.
ERROR PATENT
A review of the record reveals that the defendant was not advised as to the time delays for filing an application for post-conviction relief, in compliance with La. C. Cr. P. art. 930.8. La. C. Cr. P. art. 930.8(C) is supplicatory language that does not give an enforceable right to an individual defendant. State v. Williams , 34,936 (La. App. 2 Cir. 9/26/01), 795 So.2d 1221. The failure to advise a defendant of these rights is not grounds to vacate the sentence and remand for resentencing. Id. at 1223 ; State v. Cooper , 31,118 (La. App. 2 Cir. 9/23/98), 718 So.2d 1063, writ denied , 99-0187 (La. 5/14/99), 741 So.2d 663.
Through this opinion, we now advise the defendant that no application for post-conviction relief, including applications to seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh , 40,159 (La. App. 2 Cir. 9/21/05), 911 So.2d 898 ; State v. Williams , 50,852 (La. App. 2 Cir. 9/28/16), 207 So.3d 552.
DECREE
This conviction and sentence are AFFIRMED.

The spelling used in the district court record is Thaddious Dewayne Woods.

Edwards informed Cpl. Gray that Woods goes by either "Thedious Woods" or "Thedious Brown." Cpl. Gray included both names in his official report.

Sheridan testified that he has maintained steady employment since high school and does not have a criminal history.

State's Exhibit No. Two was admitted into evidence and published to the jury during Det. Kent's testimony.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in a light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 09-0372 (La. 11/6/09), 21 So.3d 299.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Broome , 49,004 (La. App. 2 Cir. 4/9/14), 136 So.3d 979, writ denied , 14-0990 (La. 1/16/15), 157 So.3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438 ; State v. Gipson , 45,121 (La. App. 2 Cir. 4/14/10), 34 So.3d 1090, writ denied , 10-1019 (La. 11/24/10), 50 So.3d 827 ; State v. Broome , supra.
When an investigating officer testifies concerning events which lead to the arrest of a defendant, statements made to the officer during the course of the investigation are not hearsay, if they are merely offered to explain the officer's actions. State v. Zeigler , 40,673 (La. App. 2 Cir. 1/25/06), 920 So.2d 949, writ denied , 06-1263 (La. 2/1/08), 976 So.2d 708.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court affords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Hill , 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied , 07-1209 (La. 12/14/07), 970 So.2d 529. Likewise, a reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022 ; State v. Thomas , 50,898 (La. App. 2 Cir. 11/16/16), 209 So.3d 234.