DREW, J.
Charles Mays, Jr., was charged with armed robbery, La. R.S. 14:64. After a jury found him guilty as charged, he filed a motion for post-verdict judgment of acquittal, which was denied.
The defendant was adjudicated a second-felony habitual offender and sentenced to the minimum legal sentence, 49 ½ years at hard labor without benefits, to be served concurrently with any other sentence.
No motion to reconsider sentence was filed. Mays appeals on his perceived issues of sufficiency and excessiveness. We affirm in all respects.
FACTS
The charged crime was the armed robbery of Clay Edward Fuller and Kayla Goodman on April 25, 2015. At trial, the state called five witnesses.
1. Clay Edward Fuller , one of the victims, testified:
• in April of 2015, he was a clerk at a Shreveport Circle-K store;
• on the date in question, he was working the cash register while Goodman stocked the cigarette shelf;
• a tall, middle-aged African-American man approached him, asking for cigarettes;
• the subject was wearing a brown shirt, a hat, and faded blue jeans;
• when asked for identification, the man demanded "everything out from under that counter," which Fuller initially interpreted as meaning he would buy everything under the counter;
• he was disabused of that notion when the man put a gun to Fuller's neck;
• he did not know the robber;
*175 • when he opened the cash register drawer and stepped back, the robber took all the cash and left the store;
• since this was his first robbery, he called his manager, who told him to immediately call the police;
• he spoke to several officers and an investigator;
• he saw the officers dusting for fingerprints;
• he worked at that store for about 3 ½ months after the robbery, and the robber did not return during that time frame;
• he was later contacted by Detective Richard Turnpin, who showed him a photo lineup of six people, from which he could not identify the robber;
• he never saw the gun because it was wrapped in a bandana;
• he knew it was a gun when it touched his neck; and
• the robber was not wearing a mask during the incident.
2. Kayla Goodman , Fuller's coworker, testified:
• she had been working at the Circle-K for three months prior to the robbery;
• she was cleaning and stocking the cigarette shelf behind the checkout counter when the robber entered the store at about 4:00 p.m.;
• the man walked around the store and approached the counter;
• when she asked him if he needed help, he silently walked away;
• he queued up in the checkout line behind two customers;
• he was a tall and heavyset African-American;
• she heard him tell Fuller to open the cash drawer;
• she saw him pull out a gun, partially covered with a bandana;
• when Fuller froze and did not open the drawer, the robber slammed his hand on the counter, walked behind the counter, and again told Fuller to open it;
• when Fuller still did not open the drawer, the robber pointed the gun at his face;
• she told Fuller to go ahead and open the drawer, which he did;
• the robber removed about $150 in cash and walked down the street;
• she and Fuller asked the remaining customer to step outside so they could lock the doors of the Circle-K and call the police;
• she gave the police a copy of the security footage;[1]
• the video was missing the part of the event when the man pulled out the gun, slammed his hand on the counter, and walked around the counter;
• she had never seen the robber before and could not pick him out of a six-person photographic lineup;[2]
• after the police arrived to investigate, she saw them dust the register and the lottery glass, two places where the robber placed his hands;
• she never got a good look at the robber's face during the robbery; and
• she got a good view of his face right before the robbery.[3]
*176 3. Officer Jamie Bryant , Shreveport Police Department, testified:
• he was dispatched to the Circle-K on Jefferson Paige Road on April 25, 2015, in response to an armed robbery;
• at the scene he spoke with the two employees, who informed him that approximately $150 was taken from the cash register;
• Fuller and Goodman provided a general description of the robber;
• a customer told him that he observed the robber run behind the Circle-K;
• he watched the surveillance video and collected fingerprints from the areas of the countertop where the robber placed his bare hands; and
• he turned the fingerprints over to another individual for analysis, and his involvement in the case ended upon completion of his report.
4. Sergeant Danny Duddy testified:
• as the supervisor for the Shreveport Police Department's crime scene investigations unit, he analyzed the fingerprints obtained by Officer Bryant;
• he identified two fingerprints and two palm prints taken from the scene;
• prior to taking the stand, he fingerprinted Mays outside the presence of the jury and determined that those fingerprints matched the fingerprints recovered from the crime scene; and
• this match was verified by a second examiner, but he could not determine when the prints were left on the counter.
5. Det. Richard Turnpin, Shreveport Police Dept., testified:
• he arrived at the scene right after the patrol officers;
• as per policy, he interviewed Fuller and Goodman separately;
• after the interviews, and at the scene, he viewed the surveillance video;
• Sgt. Duddy told him that the crime scene fingerprints belonged to Mays;
• he went to the defendant's last known address, where defendant's father told him that that his son was jailed in Richland Parish on unrelated charges;
• he and Sgt. Craig Ivy visited the suspect, administering rights per Miranda ;[4]
• the defendant had lost weight compared with his appearance at the time of the crime; and
• Mays was arrested on the unrelated charges and incarcerated in Richland Parish shortly after the April 25, 2015, robbery that is at issue on this appeal.
The defendant testified, unsuccessfully attempting to cast doubt on his being the robber. He attributed his inculpatory jailhouse interview statements to the fact that his mother died on May 13, 2015, and was buried on May 23, 2015, while Mays was incarcerated in Richland Parish on drug charges.
The defendant further testified:
• his jail interview with the Shreveport officers was in mid-May, the day while he was waiting to hear whether he could view his mother's body;
*177 • he was unable to view the body or attend his mother's funeral;
• his jailhouse statements were because of his emotional state, not his guilt;
• he had visited the Circle-K in question on several occasions for lunch, gas, or cigarettes, and that is why his fingerprints were found there;
• he weighed 180 pounds when he arrived at the Richland Parish Jail;[5]
• he had a moustache and goatee at the time of the robbery;
• he was innocent, but admitted blacking out while on drugs;
• he worked with a tree service, so he always had bandanas on him; and
• he had no mother-related outbursts in the presence of Det. Turnpin.
The defendant was found guilty, adjudicated a second-felony habitual offender, and sentenced to hard labor for 49 ½ years, without benefits. The trial court ordered the sentence to run concurrently with any other sentences.
I. SUFFICIENCY
The defendant argues that the evidence is insufficient to sustain a conviction.
In support of this position, he argues:
• Fuller was unable to identify him as the culprit;
• his statement to police is unreliable, as he was "emotionally unstable";
• his mother's death and his drug addiction caused him to implicate himself;
• his fingerprints are explained because he often visited the store.
Our standard of appellate review on sufficiency issues is well settled.[6]
*178 At the time of the offense, La. R.S. 14:64 provided in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
There is sufficient direct and circumstantial evidence to support Mays' conviction. The state was required to prove beyond a reasonable doubt that Mays took something of value, i.e. $150, either directly from Fuller or Goodman or from their immediate control, by use of force, while armed with a dangerous weapon.
Here, the defendant's fingerprints were found at the specific spots where Fuller and Goodman indicated that the robber touched with his bare hands. Additionally, the defendant essentially admitted to the robbery in his jailhouse interview. He did not sound distressed by his mother's death but more like a man truly trying to remember what he did on the day of the robbery. During the interview, he initially did not remember the incident; however, as the interview progressed, he slowly began to remember parts of the incident, such as going to the store to buy cigarettes, providing certain details, like the amount of money stolen, that were not provided by the police and, therefore, could only have come from personal knowledge of the robbery. Notably, Mays never flatly denied that he robbed the victims. He openly stated that he was on drugs at the time of the incident, and he may have committed the robbery. He did deny having a gun, and did admit to carrying several bandanas in his pockets, including a black one, which he often wrapped around his tools. While he argues that his fingerprints were present as a result of his frequent visits to buy lunch and cigarettes, the presence of his fingerprints on the store countertop, coupled with his statements in the jailhouse interview, are sufficient to support his conviction.
He questioned Goodman's in-court identification, but the jury clearly found her the more credible witness. The jury's acceptance of Goodman's testimony and identification was a credibility call. It must not be disturbed on appeal.
*179 II. EXCESSIVENESS
The defendant argues that the trial court erred in failing to address the factors listed in La. C. Cr. P. art. 894.1 at sentencing and in not considering the hardship that Mays' sentence would inflict upon him and his family. The state correctly responds that since the defendant received the mandatory minimum sentence, it was unnecessary to consider the La. C. Cr. P. art. 894.1 factors.
Our law on appellate review of excessive sentence claims is well settled.[7]
At the time of Mays' crime, the penalty for armed robbery was a minimum of 10 years, and a maximum of 99 years, all to be served without benefit of probation, parole, or suspension of sentence. The relevant sentencing exposure for a second-felony habitual offender is found at La. R.S. 15:529.1(A)(1).[8]
Where there is a mandatory minimum sentence required by a statute, and that required minimum sentence is imposed, as here, there is no need for a trial court to justify that minimum sentence under La. C. Cr. P. art. 894.1. State v. Allen , 50,869 (La. App. 2 Cir. 9/28/16), 206 So.3d 1093, writ denied , 16-2046 (La. 9/15/17), 225 So.3d 484 ; State v. Thomas , 41,734 (La. App. 2 Cir. 1/24/07), 948 So.2d 1151, writ denied , 07-0401 (La. 10/12/07), 965 So.2d 396.
This sentence is constitutional and could not shock anyone's sense of justice.
DECREE
The defendant's conviction and sentence are AFFIRMED.

Goodman identified the video during her testimony at trial.

At trial, however, Goodman identified this defendant as the robber.

At trial, she read from statement to the police that the robber was about 6'2?, 240 lbs., wearing a burnt orange shirt, blue jeans, and baseball cap, with a gun wrapped in a bandana.

A recording of the jailhouse interview with Mays was admitted into evidence and played for the jury, revealing that he was addicted to drugs, particularly methamphetamines; he initially claimed to have trouble remembering the event; that if he did own a gun, he would have traded it for drugs; and that he had a black bandana but could not recall what was in the bandana. The defendant never admitted complicity in the robbery, but he provided certain details that only the robber could have known through personal knowledge, e.g. , that he took "a hundred and something" dollars.

At trial, the defendant weighed 245 pounds.
When the defendant asserts that he was not the perpetrator, or remains silent, the state bears the burden of negating any reasonable probability of misidentification. State v. Powell , 27,959 (La. App. 2 Cir. 4/12/96), 677 So.2d 1008, writ denied , 96-1807 (La. 2/21/97), 688 So.2d 520 ; State v. Mickens , 31,737 (La. App. 2 Cir. 3/31/99), 731 So.2d 463, writ denied , 99-1078 (La. 9/24/99), 747 So.2d 1118. It is the province of the jury to resolve conflicting inferences from the evidence. State v. Mickens , supra ; State v. Free , 26,267 (La. App. 2 Cir. 9/21/94), 643 So.2d 767, writ denied , 94-2846 (La. 3/10/95), 650 So.2d 1175. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness-if believed by the trier of fact-is sufficient support for a requisite factual conclusion. State v. Jones , 34,863 (La. App. 2 Cir. 8/22/01), 794 So.2d 107, writ denied , 01-2648 (La. 8/30/02), 823 So.2d 938. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. State v. Mickens, supra .

A sufficiency of the evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in a light most favorable to the prosecution. State v. Calhoun , 51,218 (La. App. 2 Cir. 4/5/17), 216 So.3d 1101. When the direct evidence is thus viewed, the facts established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 09-0372 (La. 11/6/09), 21 So.3d 299. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Broome , 49,004 (La. App. 2 Cir. 4/9/14), 136 So.3d 979, writ denied , 14-0990 (La. 1/16/15), 157 So.3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438 ; State v. Gipson , 45,121 (La. App. 2 Cir. 4/14/10), 34 So.3d 1090, writ denied , 10-1019 (La. 11/24/10), 50 So.3d 827 ; State v. Broome , supra .
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Demery , 49,732 (La. App. 2 Cir. 5/20/15), 165 So.3d 1175, writ denied , 15-1072 (La. 10/17/16), 207 So.3d 1067. A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Demery , supra . The appellate court does not assess credibility or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442 ; State v. Calhoun , supra . A reviewing court affords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 09-0725 (La. 12/11/09), 23 So.3d 913 ; State v. Hill , 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied , 07-1209 (La. 12/14/07), 970 So.2d 529.

La. C. Cr. P. art. 881.1 precludes a defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. Accordingly, when a defendant fails to file a motion to reconsider sentence, the appellate court's review of a sentencing claim is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Jones , 41,449 (La. App. 2 Cir. 9/20/06), 940 So.2d 61 ; State v. Duncan , 30,453 (La. App. 2 Cir. 2/25/98), 707 So.2d 164.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato , 603 So.2d 739 (La. 1992) ; State v. Livingston , 39,390 (La. App. 2 Cir. 4/6/05), 899 So.2d 733 ; State v. White , 37,815 (La. App. 2 Cir. 12/17/03), 862 So.2d 1123.
A sentence violates La. Const. art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Smith , supra .
The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Diaz , 46,750 (La. App. 2 Cir. 12/14/11), 81 So.3d 228.

"(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction."